## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| EARL MILLS | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No.: 1:22-cv-2538-LKG |
| | ) | Dated: May 22, 2025 |
| WARDEN FRANK BISHOP, | ) | |
| Respondent. | ) | |

USDC– GREENBELT
'25 MAY 22 PM3:41

### <u>MEMORANDUM OPINION</u>

Represented Petitioner Earl Mills, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2017 convictions in the Circuit Court for Baltimore City, Maryland for attempted first degree murder and related crimes. ECF No. 1. Respondent filed an Answer arguing Mills' claims are time-barred or, alternatively lack merit. ECF No. 6. For the reasons that follow, the Petition shall be **DENIED**, and a certificate of appealability shall not issue.

### I.    BACKGROUND

#### A.  Trial

On November 7, 2016, Mills was indicted in the Circuit Court for Baltimore City on nineteen counts, including attempted first degree murder and related crimes. ECF No. 6-1 at 5-10. After a trial by jury held on May 30 through June 2, 2017, Mills was found guilty of attempted first degree murder, conspiracy to commit murder, reckless endangerment, conspiracy to use a firearm in a crime of violence, and use of a firearm in a crime of violence. ECF No. 6-2, 6-3, 6-4, 6-5.

According to the Appellate Court of Maryland, [1] the following facts were adduced at trial:

---

[1] Formerly known as the Maryland Court of Special Appeals.

At approximately 1:20 p.m. on September 27, 2016, the Baltimore Police Department received a report of a shooting in the area of Calhoun and Laurens Streets. Detectives Carl Stambaugh and Nigel Rose responded. When they arrived at the scene, they found a Honda Crosstour with bullet holes that had crashed into a parked vehicle on the southeast corner of the intersection of Calhoun and Laurens. Police officers also observed numerous shell casings littering the area. Around the same time, a call went out about a related crime scene on the 1200 block of Woodyear Street, where Charles Jeffries had been found on the sidewalk suffering from what appeared to be gunshot wounds to his thigh and abdomen. Surveillance footage from the time of the incident obtained from security cameras posted on a nearby apartment building showed a white Honda Accord driving westbound on Laurens Street. At the intersection with Calhoun Street, the Accord encountered Mr. Jeffries's Crosstour, which was travelling north. As depicted on the video footage, multiple gunshots coming from the Accord could be heard as it crossed in front of the Crosstour. The Crosstour then accelerated through the intersection, turned, and crashed into a parked car. Four men exited the Crosstour and ran away. Three different accounts provided by Rodney Burgess, a passenger in the Crosstour, played a critical role at trial. First, Mr. Burgess gave a recorded statement to the police on October 4, 2016. In that statement, which was played for the jury, Mr. Burgess provided the following information:

> • On September 27, 2016, he and his cousin, Mr. Jeffries, were driving from the Avenue Market on Pennsylvania Avenue when they realized that "some guys" were following them. Mr. Jeffries was driving.

> • Mr. Burgess then heard several shots and saw "[a] bullet at the windshield." He pulled Mr. Jeffries from the car and pushed him between other cars so that he could not be seen. His other cousin, who was sitting in the back of the vehicle, had already left.

> • Once everyone was out of the vehicle, they began to run, turning onto Woodyear Street. The people who were following them continued to shoot at them.

> • After the shooters left, Mr. Burgess returned to find Mr. Jeffries still on the ground and injured. While waiting for help to arrive, Mr. Burgess called his mother and Mr. Jeffries's girlfriend.

> • Mr. Burgess recognized the shooter "from being in the area." He knew him as "Earl."

> • Mr. Burgess had not seen a gun, but the shots were fired from a white car.

Shortly after giving this statement, Mr. Burgess was taken to a photo array, a recording of which was also played for the jury at trial. The photo array was administered by Detective Michael Boyd, an officer who was not otherwise

2

involved in the shooting investigation. Mr. Burgess identified Mr. Mills as the shooter and wrote, "This the boy that shoot" under Mr. Mills's photo. He signed his identification of Mr. Mills with the name "Rodney Lee." Second, in March 2017, Mr. Burgess signed an affidavit for Mr. Mills's counsel in which he acknowledged being present in the vehicle at the time of the shooting but claimed to have had his head down. He also claimed that the interviewing detectives, not he, had identified the shots as having come from a white Honda owned by "Earl," that he did not know Mr. Mills, and that he did not pick anyone out of the photo array even after the detectives prompted him by pointing at the picture of Mr. Mills. Mr. Burgess asserted that he did not know who had shot at Mr. Jeffries.

Third, Mr. Burgess told yet another story at trial, where he acknowledged that Mr. Jeffries was his cousin but denied any recollection of the shooting and any knowledge of Mr. Mills. He also denied giving a statement to the police or meeting with prosecutors.

Mr. Mills elected not to present any witnesses at trial. During closing argument, the State, over objection, presented images of Mr. Burgess's signature on the affidavit he signed for Mr. Mills's counsel and the "Rodney Lee" signature on the photo array. The State asserted that the signatures were identical and asked the jury to come to that conclusion.

ECF No. 6-1 at 92-95. On September 23, 2017, the trial court sentenced Mills to life plus fifteen years' imprisonment. ECF No. 6-6 at 29-34.

### B. Direct Appeal

Mills appealed his conviction to the Appellate Court of Maryland. ECF No. 6-1 at 29-48. He asserted five assignments of error:

(1) The conviction and sentence for conspiracy to use a firearm must be vacated.

(2) [Mills'] sentence for reckless endangerment must be vacated.

(3) The trial court erred in permitting the prosecutor to conduct a handwriting comparison and invite the jury to conduct a handwriting comparison during closing argument.

(4) The trial court erred in admitting hearsay evidence.

(5) The trial court erred in ruling that the purported video of the two crime scenes was properly authenticated.

*Id.* at 30. The Appellate Court of Maryland issued an opinion on August 1, 2018, vacating Mills' conviction for conspiracy to use a firearm in a crime of violence, affirming all other convictions,

vacating all sentences, and remanding the matter back to the circuit court for resentencing. *Id.* at 91-110. Mills sought further review with the Supreme Court of Maryland,[2] which denied his petition for a writ of certiorari on November 16, 2018. *Id.* at 140.

On May 3, 2019, the circuit court resentenced Mills to life plus fifteen years imprisonment. ECF No. 6-7 at 21-22. The same day, Mills filed a Motion for Modification of Sentence. ECF No. 6-1 at 141-144. The circuit court issued an order on May 30, 2019, holding Mills' motion *sub curia. Id.* at 149. There is no indication on the docket that the circuit court ever adjudicated the motion.

### C. Petition for Postconviction Relief

Mills filed a petition for postconviction relief with the circuit court on May 20, 2020. ECF No. 6-1 at 150-174, 208-216. He asserted thirteen claims:

(1) Trial counsel was ineffective for failing to move to suppress the photo identification of the petitioner by Rodney Burgess (*id.* at 155-156)

(2) Trial counsel rendered ineffective assistance during voir dire, including failing to request questions designed to ferret out bias and failing to object to compound voir dire questions which allowed jurors to self-assess their own bias (*id.* at 156-160)

(3) Trial counsel was ineffective for failing to object to the trial court closing the courtroom to the public during voir dire (*id.* at 160-164)

(4) Trial counsel was ineffective for failing to object and/or move for a mistrial based on the prosecutor's improper and misleading comments during opening statement and closing argument (*id.* at 164-166)

(5) Trial counsel was ineffective for failing to adequately consult with the petitioner prior to trial, for failing to review discovery with him, and failing to discuss with him his right to testify or not testify (*id.* at 166-167)

(6) Trial counsel was ineffective for failing to interview witnesses prior to trial, including Donnell Burgess, who would have testified that the petitioner was not the person who committed the crime (*id.* at 167-168)

(7) Trial counsel was ineffective for failing to object to the prosecutor asking state witness Rodney Burgess if he was paid by the defense to sign an affidavit and to move for a mistrial due to the extremely prejudicial nature of the questioning (*id.* at 168-169)

---

[2] Formerly known as the Maryland Court of Appeals.

(8) Trial counsel was ineffective for failing to thoroughly argue his motion for judgment of acquittal (*id.* at 169)

(9) Trial counsel was ineffective for failing to object and/or move for a mistrial based on repeated instances of improper comments made by the state during closing argument (*id.* at 169-171)

(10)    The petitioner is entitled to reversal of his convictions in light of the cumulative effect of the errors alleged herein (*id.* at 171-172)

(11)    Appellate counsel was ineffective for failing to raise the issue of the state improperly vouching for witnesses during opening statement and closing argument and making improper arguments regarding "law of the street" (*id.* at 172-173)

(12)    Prosecutorial Misconduct—failure to disclose *Brady* material[3] (*id.* at 213-214)

(13)    Ineffective assistance of counsel alternative ground—failing to investigate and failing to effectively cross-examine witnesses and to posit and alternative motive for the crime. (*id.* at 214-215).

The circuit court denied Mills' petition in a written order dated November 22, 2021. *Id.* at 217-250. The Appellate Court of Maryland denied Mills' leave to appeal on April 1, 2022. *Id.* at 270-271. The mandate issued on May 2, 2022. *Id.* at 272.

**D. Federal Habeas Petition**

Mills filed his federal petition for habeas corpus relief on October 4, 2022. ECF No. 1. He raises three claims for relief:

(1) Did the Circuit Court err in denying post-conviction relief based upon trial counsel's failure to move to suppress a photo identification of the Petitioner by Rodney Burgess? *Id.* at 6-8.

(2) Did the Circuit Court err in denying post-conviction relief based upon trial counsel's (a) failure to object and/or move for a mistrial based upon the prosecutor's improper and misleading comments during opening statement, (b) failure to object and/or move for a mistrial based upon the prosecutor asking state witness Rodney Burgess if he was paid by the defense to sign an affidavit and (c) failure to object and/or move for a mistrial based upon the prosecutor's improper and misleading comments during closing argument? *Id.* at 8-17.

(3) Did the Circuit Court err in denying post-conviction relief based upon

---

[3] The last two claims were labeled as "1" and "2" in Mills' Supplemental Postconviction Petition.

prosecutorial misconduct due to a Brady violation when the State failed to disclose exculpatory notes of an interview with Charles Jeffries' mother, Candy Barnett? *Id.* at 17-19; or in the alternativefailing to investigate and failing to effectively cross-examine witnesses and to posit and alternative motive for the crime.[4] *Id.* at 18, FN 5.

Respondents filed an Answer on December 19, 2022, arguing that Mills' claims should be dismissed because they are time-barred, or in the alternative, lack merit. ECF No. 6.

## II.    TIMELINESS

The one-year limitation period for a person in state custody to file a federal habeas petition runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Any "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In this case, the one-year limitations period for filing for federal habeas relief runs from the date on which the judgment became final by the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). After resentencing, Mills did not seek a direct appeal through the Maryland state courts. Mills had thirty days from May 3, 2019, to file a notice of appeal with the Appellate Court of Maryland, which he did not do. *See* Md. Rule 8-202(a). Therefore, his conviction became final on **June 2, 2019**.

---

[4] In footnote #5 of his habeas Petition, Mills alleges that his counsel was ineffective. Out of an abundance of caution, the Court has included the reference as an alternative ground for relief, as it was asserted in Mills' postconviction petition.

However, the statute of limitations did not begin to run on June 2, 2019, because it was tolled when Mills filed the May 3, 2019, Motion for Modification of Sentence. *See Mitchell v. Green*, 922 F.3d 187 (4th. Cir. 2019) (holding that Md. Rule 4-345, providing for reconsideration of sentence, tolls the one-year statute of limitations in § 2244(d)). The statute of limitations remained tolled for five years, or until May 3, 2024, by the terms of Md. Rule 4-345.[5] By that time, Mills had already filed his federal habeas petition, rendering it timely.

Respondents' Limited Answer advances an argument that Mills' Motion for Modification of Sentence did not toll the statute of limitations because it was merely a "placeholder," which was held in abeyance. ECF No. 6 at 30-31, 40-51. Respondents have advanced the same "placeholder" argument in this Court in the past, and it has been soundly rejected. In the matter of *Maietta v. Gelsinger*, No. PX-18-2185, Judge Xinis issued an Order unequivocally rejecting the merits of Respondents' position:

> The United States Court of Appeals for the Fourth Circuit Court in *Mitchell v. Green* . . . squarely held that sentence modification motions brought pursuant to Md. Rule 4-345 amount to a collateral proceeding which does statutorily toll the applicable limitations period. *See Mitchell v. Green*, 922 F.3d 187, 198 (4th Cir. 2019) . . ..

> Respondents . . . move for reconsideration as to the applicability of *Mitchell* to Maietta's petition. Respondents argue that *Mitchell* does not reach Maietta's case because his Rule 4-345 reconsideration motion was no more than a "placeholder" and not a proper application sufficient to toll the limitations period for filing the § 2254 petition. The Court disagrees.

> ***Mitchell* unambiguously held that a motion to reconsider the state sentence filed pursuant to Maryland Rule 4-345 "tolls AEDPA's limitations period." *Mitchell*, 922 F.3d at 195. In so holding, the Court did not place any limits on this straightforward determination. It did not parse the intent of the filer as to whether the motion was meant to function as a "placeholder" or filed in earnest on its merits. Rather, the Court grounded its decision in whether the motion was filed at all. *Id.***

> Even more pertinent to this case, Maietta's Rule 4-345 motion is functionally identical to the motion at issue in *Mitchell*. Like *Mitchell*, Maietta initially filed the

---

[5] A five-year limit on the court's authority to modify a sentence was added to the Rule effective July 1, 2004. *Tasker v. Maryland*, No. AW 11-CV-1869, 2013 WL 425040, at *3 (D. Md. Jan. 31, 2013), *aff'd,* 517 F. App'x 172 (4th Cir. 2013), and *abrogated by Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2021).

motion and asked that it be held *sub curia*. Maietta thereafter supplemented the motion with legal and factual support for his requested reduction in sentence. The petitioner in *Mitchell* similarly requested that his Rule 4-345 motion be held in abeyance. Indeed, Respondents concede that this is the practice in Maryland—petitioners routinely file Rule 4-345 motions with little detail then request the motion be held *sub curia* so that the petitioner may supplement the filing in advance of any ruling on the merits. Accordingly, Respondents provide the Court no meaningful grounds to conclude that *Mitchell* does not reach the tolling question here. And this Court can discern no principled reason to agree with the Respondents' position.

*Maietta*, No. PX-18-2185 (emphasis added), ECF 33. The Court agrees with Judge Xinis' analysis, which was also previously communicated to the Respondents in *Burrus v. Weber*, No. CV SAG-20-2109, 2023 WL 2914759, at *3–4 (D. Md. Apr. 12, 2023) as well as *Williams v. Maryland Att'y Gen.*, No. CV ELH-22-75, 2022 WL 2176858 (D. Md. June 16, 2022), ELH *Williams v. Maryland Att'y Gen.*, No. CV ELH-22-75, 2022 WL 2176858, at *4 (D. Md. June 16, 2022), and *Drummond v. Morgan*, No. 20-CV-659-LKG, 2022 WL 16838857, at *5 (D. Md. Nov. 9, 2022). Mills' motion for modification of sentence, regardless of its characterization, properly tolled the statute of limitations.

The Court finds that Mills' federal habeas petition is timely.

## III.    STANDARD OF REVIEW

In analyzing Mills' petition for a writ of habeas corpus, the Court is bound by the standard of review for the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The Court may grant the writ on a claim adjudicated on the merits in a state court proceeding only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or involved an "unreasonable application of such law," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1); 28 U.S.C. § 2254(d)(1)(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

In assessing a petitioner's habeas claims, the district court looks to the opinion of "the last reasoned decision of a state court addressing the claim." *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022), quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 364–365. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407.

In other words, to obtain relief on his petition, Mills must identify the "clearly established" legal principle on which he relies. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from its passing dicta. *See White v. Woodall*, 572 U.S. 415, 419 (2014). Mills also must describe this holding with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). He cannot recite a holding at a "high level of generality." *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted); *Metrish v. Lancaster,* 569 U.S. 351, 367–68 (2013). Circuit precedent cannot turn "a general principle of Supreme Court jurisprudence into a specific legal rule" that has not been stated by the Supreme Court. *Lopez*, 574 U.S. at 7, quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

If relying on the "unreasonable application" clause, Mills next must show that the state court engaged in an "unreasonable application" of clearly established law. Under this test, a federal court's belief that a state court committed an error when applying a legal principle to the facts of a case does not suffice. Rather, the federal district court must be able to describe the state court's application as "objectively unreasonable[.]" *White*, 572 U.S. at 419, quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Mills faces an additional hurdle if he alleges a trial court error that the state court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA. *Brown*, 596 U.S. 118. *Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 637, quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). A "substantial or injurious effect or influence" means "actual prejudice." *See id.* at 637–38. A "federal court must *deny* relief to a state

habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 134. To succeed on any of his trial error claims, Mills must convince this federal habeas court that there is grave doubt about his verdict *and* demonstrate that every fairminded jurist would agree that the error was prejudicial. *Id.* at 1525.

As discussed in detail below, these standards foreclose Mills' claims.

## IV.    DISCUSSION

### A.  Ineffective Assistance of Counsel

Mills' first two grounds for relief are premised on ineffective assistance of counsel. The Sixth Amendment to the Constitution guarantees a criminal defendant the right to effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *United Staters v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015).   To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88; *see Williams (Terry)*, 529 U.S. at 390; *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).

First, the petitioner must show that counsel's performance was deficient.   Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229.   The petitioner must prove his claim by a preponderance of the evidence. *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (4th Cir. 2021; *United States v. Pettiford*, 612 F.3d 270, 277 (2010).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207–08; *United States v. Richardson*, 820 F. App'x 225, 225 (4th Cir. 2020); *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227.   The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it

deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. at 118. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Harrington*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. 154, 155 (2024) (death penalty case).

A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Strickland*, 466 U.S. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### (i)  Failure to File Motion to Suppress

In Ground One, Mills contends that his trial counsel was ineffective for failing to file a motion to suppress the photo identification by Rodney Burgess. ECF No. 1 at 6-8.

On October 4, 2016, Rodney Burgess gave a taped statement to the police and identified a man named "Earl" as the person who shot at him. ECF No. 6-3 at 90-105. On the same day, Detective Michael Boyd conducted a photo lineup with Rodney Burgess. *Id.* at 210. The photo lineup presentation to Burgess was also tape recorded. *Id.* at 215-216. Burgess identified photo number "2" as "that's the boy that shot." *Id.* at 225. Detective Boyd instructed Burgess to write his name (*id.*) and Burgess wrote "Rodney Lee." *Id.* at 230.

Detective Boyd testified at Mills' trial. *Id.* at 208-232. He testified that he was involved in the investigation of the shooting on September 27, 2016. *Id.* at 209. Detective Boyd testified that before the Burgess photo lineup, his only involvement in the investigation was to interview the victim's cousin. *Id.* at 210. Detective Boyd testified that he did not know who the suspect was when he conducted the photo lineup with Burgess and he did not suggest to Burgess in any way which photo he should select. *Id.* at 225-226.

When Rodney Burgess testified at Mills' trial, he denied giving any statement to the police on October 4, 2016 and denied that it was his voice on the taped statement. *Id.* at 79, 89, 108. Burgess denied writing his name on the photo lineup. *Id.* at 108. Burgess testified that he did not know "Rodney Lee." *Id.* at 116. Burgess denied he was present during the shooting (*id.* at 77-79) and denied that he knew Earl Mills. *Id.* at 108. The state played the full content of Burgess' taped statement and taped photo lineup for the jury. *Id.* at 90-105, 215, 218-225.

Mills' trial counsel, James Rhodes, testified at the postconviction hearing. ECF No. 6-8 at 13-39. Rhodes testified that he intentionally did not file a motion to suppress the Rodney Burgess photo lineup. *Id.* at 17. Rhodes testified that the state's case relied entirely on Rodney Burgess' testimony and Rhodes' strategy was to discredit Burgess. *Id.* Rhodes testified that he needed the photo lineup to be entered into evidence because Rodney Burgess wrote the wrong name on it. *Id.* Rhodes testified that he could use this evidence to demonstrate that Burgess could not be trusted, and the police conducted a poor investigation. *Id.*

Mills' counsel argued to the postconviction court, as he does in his federal habeas petition, that the photographic lineup should have been suppressed because the officer that conducted it was an active participant in the shooting investigation by interviewing Donnell Burgess and he failed to follow Baltimore City Police Department's "double blind" lineup policy. *Id.* at 8. The postconviction court denied the claim. ECF No. 6-1 at 222-223. The postconviction court identified the applicable law for due process analysis on witness identification and concluded:

> Petitioner does not provide any specific facts to allege suggestiveness on behalf of the detective who administered the photo array. Petitioner argues that there is a likelihood of suggestibility because the detective administering the photo array also participated in the investigation. Just because the detective interviewed the witness' cousin, Donnell Burgess, does not hint or presume that he was suggestive in administering the photo array.

> Petitioner has not provided any facts or argument that would make the identification procedure suggestive; there were no indicia of pressure, clues, or influence, that might have prompted defense counsel to seek to suppress the identification for such reasons. More pragmatically, trial counsel has testified at hearing that he did not want to file such a motion because he needed to discredit the State's only identifying witness with his contradictory statements and the disputed photo array bearing the wrong name ("Rodney Lee"). Defense counsel James Rhodes was strategically intent to challenge Burgess' identification of Petitioner, and his credibility, at every juncture.

*Id.* at 223.

Mills has failed to demonstrate that the postconviction court's dismissal of Ground One was an unreasonable application of *Strickland*. Mills argues that it would have been a better strategy to suppress the photographic lineup than to discredit Rodney Burgess. ECF No. 1 at 8. As an initial matter, Mills fails to show that a motion to suppress would have been successful.

"Due process principles prohibit the admission at trial of an out-of-court identification obtained through procedures so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Ivey*, 60 F.4th 99, 109 (4th Cir.), *cert. denied,* 144 S. Ct. 160 (2023) (internal citations omitted). "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *United States v. Briggs,* 755 F. App'x 222, 224 (4th Cir. 2018) (internal citations omitted).

The postconviction court concluded that there was no evidence that Rodney Burgess' identification was the result of anything other than his own recollection of the shooting. ECF No. 6-1 at 223. This Court is bound to defer to that conclusion. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.")

In any event, the record includes a transcription of the taped photo lineup and Detective Boyd's testimony, neither of which indicate law enforcement influenced Rodney Burgess' selection of Mills' photograph. Any contradictory testimony by Rodney Burgess at a motion to suppress hearing would likely have been wholly discounted by the trial court considering the content of his taped statement and the taped photo lineup.

Mills also cannot demonstrate that his trial counsel's strategy was deficient performance. He argues that suppressing the lineup would have been a more successful trial strategy, but *Strickland* requires a federal habeas court, when assessing counsel's performance to be "highly deferential." *Strickland*, 466 U.S. at 689; *Meyer v. Branker,* 506 F.3d 358, 371 (4th Cir.2007) ("It is a cardinal tenet of the Supreme Court's ineffective assistance jurisprudence that strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). This standard is "necessary to avoid second-guessing of 'perfectly reasonable

judgments,' and to 'eliminate the distorting effects of hindsight' after an adverse decision." *Id.*
(citing *Strickland,* 466 U.S. at 689).

Considering the deference owed to trial counsel's strategic decisions and to the
postconviction court's reasonable conclusion that trial counsel was not ineffective, the Court
cannot say that the postconviction court's dismissal of Ground One was contrary to or an
unreasonable application of federal law.

### (ii)    Failure to Object to Prosecutorial Misconduct

In Ground Two, Mills contends that his trial counsel was ineffective for failing to object
or move for a mistrial based on (a) the prosecutor's misleading statements during the opening
statement, (b) the prosecutor asking witness Rodney Burgess if the defense paid him for an
affidavit, and (c) the prosecutor's misleading statements during the closing argument.[6] ECF No. 1
at 8-17.

In his postconviction petition, Mills argued that his counsel should have objected to the
following comment made by the prosecutor during opening the statement: "So you can use your
judgment, your experience about Baltimore in 2016 and 2017 to think about how Rodney Burgess
might feel when he arrived to court to testify." ECF No. 6-1 at 164.

Mills argued to the postconviction court that the statement violated Maryland precedent
prohibiting "law of the streets" argument regarding witnesses' unwillingness to testify in
Baltimore City. *Id.* Mills' trial counsel testified at the postconviction hearing that he did not
specifically recall the statement, but likely did not object to avoid calling attention to it. ECF No.
6-8 at 23.

Mills argued that his counsel should have objected during closing argument when the
prosecutor stated that Rodney Burgess did not have the intellectual ability to lie during his

---

[6] In his federal habeas Petition, Mills appears to argue that his counsel was ineffective for failing to move for a mistrial
when the prosecutor asked the jury to compare Rodney Burgess' signatures on the photo lineup and affidavit. ECF
No. 1 at 13-18. This claim was raised on direct appeal as a trial court error and not ineffective assistance of counsel.
ECF No. 6-1 at 102-103. Mills acknowledges this fact in his Petition, stating, "raised on appeal, but is relevant in
conjunction with the cumulative effect of the other comments." ECF No. 1 at 14. The Appellate Court of Maryland
concluded that the trial court properly overruled defense counsel's objection because the signatures were in evidence
and the argument was based on evidence in the record. *Id.* at 102-103. The Court has not included a discussion of the
"signature comparison" argument as part of Ground Two because Mills did not assert a trial court error claim in his
Petition. To the extent that it could be reasonably interpreted that Mills exhausted and raised an ineffective assistance
of counsel claim in state court, the Court finds that the claim lacks merit because the Appellate Court of Maryland
found the trial court appropriately overruled the defense counsel's objection, and thus Mills could not show deficiency
or prejudice.

testimony. *Id.* at 169. Next, he argued that the prosecutor alluded to the "law of the streets" argument from his opening by stating, "[a]nd you live in Baltimore, and it's 2017 and you know why a person's scared." Trial counsel objected to this statement but did not move for a mistrial. Mills also argued that his counsel should have objected or moved for a mistrial when the prosecutor said, "[t]his case means a lot because this was a shooting in broad daylight…[w]e trust that you will see that justice is done." *Id.* at 170. Trial counsel testified at the postconviction hearing that he did not object to the statements or move for a mistrial because he wanted to keep the jury focused on his theme that the state's case relied on a single witness and he did not want to give the state "another shot" to remedy that issue at retrial. ECF No. 6-8 at 27-28.

The postconviction court concluded that trial counsel's performance was not deficient because the prosecutor did not engage in misconduct. *Id.* at 228-232. The postconviction court found that the prosecutor's comments on Rodney Burgess were appropriately related to the evidence and the Maryland pattern jury instruction on witness credibility. *Id.* at 229. The postconviction court also found the prosecutor's comments were distinguishable from Maryland precedent prohibiting "law of the streets" arguments, which urge the jury to teach the defendant a lesson and clean up the streets with their verdict. *Id.* at 230-231. Lastly, the postconviction court found that Mills failed to show that his counsel's failure to object or move for a mistrial prejudiced him. *Id.* at 232.

Next, Mills argued to the postconviction court that his counsel was ineffective for failing to object or move for a mistrial when the prosecutor asked Rodney Burgess if he was paid by the defense to sign an affidavit.

Rodney Burgess testified at trial that he provided the defense counsel with an affidavit that contradicted his statement to the police. ECF No. 6-3 at 117, 128-129. Particularly, Burgess denied in the affidavit that he identified Mills as the shooter. *Id.* at 128-129. The prosecutor asked Rodney Burgess if he was paid any money to sign the affidavit, which he denied. *Id.* at 131. Trial counsel was consistent at the postconviction hearing that he did not move for a mistrial[7] when the prosecutor asked this question, because the state's case relied solely on Rodney Burgess and a mistrial would give the state a chance to locate other witnesses. ECF No. 6-8 at 25-26.

---

[7] Rhodes testified that he believed he did object (ECF No. 6-8 at 25), but the trial transcript reflects that he made no objection. ECF No. 6-3 at 131.

The postconviction court found that Mills' trial counsel was not ineffective for failing to object or move for a mistrial because the prosecutor properly used Maryland's evidence rules to attack Rodney Burgess' credibility. ECF No. 6-1 at 236-237. The postconviction court found Burgess' trial testimony to be "wildly inconsistent" from the statements he had given to the police. The postconviction court also found that Mills failed to show prejudice, noting that the state may have weakened its own case by impeaching a state witness. *Id.* at 237.

In his federal habeas petition, Mills argues that the postconviction court misinterpreted Maryland law on the "law of the streets" argument. ECF No. 1 at 8-12. Mills argues that the cumulative effect of the improper closing argument statements was an insinuation of "witness intimidation and tampering." *Id.* at 16. With respect to the Burgess affidavit, Mills argues that the prosecution made a "bald accusation" of unethical conduct without a "scintilla of proof." *Id.* at 13.

Mills has failed to identify how the postconviction court unreasonably applied *Strickland* to his case, and hedisagrees with the postconviction court's interpretation of Maryland precedent. But this court is bound to defer to the postconviction court's interpretation of Maryland law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus."). Nor has Mills identified a United States Supreme Court case that calls for habeas relief under the circumstances. *See Brown v. Davenport*, 596 U.S. 118, 136 (2022) ("Section 2254(d)(1) limits habeas relief to cases where a state-court decision contravenes or unreasonably applies clearly established Federal law, as determined by the Supreme Court of the United States.").

Indeed, trial counsel was not ineffective for failing to object or move for a mistrial in response to the prosecutor's comments during the opening statement and closing argument. This Court is bound to defer to the postconviction court's conclusion that the prosecutor's comments were proper. In any event, a prosecutor's improper comments will be held to violate the Constitution only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986), (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). The prosecutor's comments were fairly related to the central issue of Rodney Burgess's credibility, and the prosecutor was entitled to explore his credibility within the boundaries of Maryland's evidence rules. Moreover, deference is appropriately due to trial counsel's strategic decision to avoid providing the state with the potential advantages of a retrial.

The postconviction court's denial of Ground Two is neither contrary to nor an unreasonable application of *Strickland* and is dismissed for lack of merit.

**B. Brady Violation**

In Ground Three, Mills contends that the state engaged in prosecutorial conduct by suppressing a police witness interview of the victim's mother from September 30, 2016. ECF No. 1 at 17-19. The police notes stated:

> On 09/30/2016 this detective spoke to Ms. Candy Barnett (mother of victim) who was advised that she had heard that this incident all goes back to their friend Frederick Catchings. Catchings is currently in jail for attempted murder and Catchings is the reason Lor Skoota got killed. Catchings took Skoota's car and did the shootings which led others to believe it was Skoota. In addition, Cedric Catchings (Fred's brother) killed "Slow" in broad daylight. This started a turf war between two groups. Ms. Barnett said that Charlie's friend took a picture of them at the Avenue Market and posted it on social media. Once it was posted, their rivals knew where they were and came looking for them. She heard "Little Head" (Desmond) and "Mook" (Rodney Burgess). She also heard that Burgess was grazed in the chin and chest in the same incident.

ECF No. 6-1 at 238. Mills argues that the interview was favorable to him because it disclosed that Charles Jefferies was engaged in a "turf war" with two other potential suspects (*id.* at 17) and the suppression of the interview prevented his defense from positing an alternative theory for the crime. *Id.* at 18.

Mills' trial counsel testified at the postconviction hearing that he had no recollection of seeing the September 30, 2016 interview in discovery disclosures from the state. ECF No. 6-8 at 30. He acknowledged that he received some items from the state on May 22, 2017, and it was possible that the interview was included. *Id.* at 32-33. When asked by the state whether he would have called the victim's mother as a witness at trial, Mills' trial counsel responded, "absolutely not." *Id.* at 34.

The postconviction court denied Mills' claim of prosecutorial misconduct. ECF No. 6-1 at 238-246. The postconviction court found that the interview was disclosed to Mills on May 22, 2017, 11 days before trial. *Id.* at 244 and it was not material because it was not based on the witnesses' firsthand knowledge and would not have changed the outcome of the trial. *Id.* at 244-246.

*Brady v. Maryland*, 373 U.S. 83 (1963), instructs, "the suppression by the prosecution of evidence favorable to an accused" violates due process where the evidence is "material either to

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." For a court to find a *Brady* violation, it must determine that the evidence was 1) favorable to the accused, 2) suppressed by the prosecution (either willfully or inadvertently), and 3) material. *Banks v. Dretke,* 540 U.S. 668, 691 (2004). Evidence that is favorable to the accused includes both exculpatory (whether requested by defendant or not) and impeachment evidence. *Id.*; *see United States v. Bagley,* 473 U.S. 667, 676 (1985) (holding that the *Brady* rule includes impeachment evidence).

The touchstone of materiality is a "concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 104 (1976). Accordingly, an individual alleging a *Brady* violation must demonstrate that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682. Although this analysis can entail an examination of the nature and strength of the prosecution's case, the materiality test is not an evaluation of the sufficiency of the non-suppressed evidence, nor does it require the defendant to prove, by a preponderance of the evidence, that he would have been acquitted if the suppressed evidence had been disclosed. *See Kyles v. Whitley,* 514 U.S. 419, 434-435 (1995). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999), quoting *Kyles,* 514 U.S. at 435.

Mills has not demonstrated that the evidence was either suppressed or material. The postconviction court determined that the interview notes were disclosed eleven days prior to trial. *See United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 532 (4th Cir.1985) (finding no *Brady* violation if the evidence is disclosed in time for effective use at trial). In any event, the interview notes do not undermine confidence in the verdict.

The state's case was based on Rodney Burgess' identification of Mills as the shooter. The jury clearly accepted the state's theory and believed Burgess' original statement to the police, even though Burgess recanted at trial. The police interview notes are based on speculation by the victim's mother that the Catchings brothers were involved in the shooting. Moreover, it is unlikely that the victim's mother would have provided favorable testimony for the man accused of

attempting to kill her son. Trial counsel acknowledged this fact when he testified that he would "absolutely not" call her as a witness. (ECF 6-8 at 34).[8]

The postconviction court determined that the interview notes were not material because they consisted of hearsay. However, *Brady* material does not have to be admissible under state evidence rules as long as it could lead to admissible evidence. *See, e.g., Kyles,* 514 U.S. at 428–32, 445–51, 454 (holding that undisclosed information relating to a non-testifying informant was *Brady* material). Nevertheless, Mills cannot establish materiality because he has not shown that earlier knowledge of the speculative comments in the statement would have, in fact, led to admissible evidence.

In sum, Mills has not shown that the interview notes were suppressed by the state nor has he shown that the interview notes yield information that undermines confidence in the verdict. The postconviction court's denial of his *Brady* claim was neither contrary to or an unreasonable application of federal law.

As an alternative argument, Mills contends that his trial counsel was ineffective for failing to use the interview notes at trial. ECF No. 1 at 18, FN5. The postconviction court rejected this claim, finding that trial counsel's performance was not deficient, and it was sound strategy to challenge the credibility of the state's sole witness. ECF No. 6-1 at 246-249.

The Court agrees. The *Strickland* standard is "highly deferential" and necessary because it is "all too easy" to second guess counsel's efforts after they have proven unsuccessful. 466 U.S. at 689. Since adverse outcomes can make perfectly reasonable judgments look questionable in retrospect, "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689.

Mills' argument amounts to a second-guessing of his trial counsel's sound trial strategy. Noted above, Mills has also failed to show that further investigation of the interview notes would have led to evidence that would have changed the outcome of his trial. Considering the deference owed to both the postconviction court and to trial counsel, the Court cannot say that the denial of Mills' alternative ineffective assistance of counsel claim was an unreasonable application of *Strickland*.

Ground Three is dismissed for lack of merit.

## V.    CERTIFICATE OF APPEALABILITY

---

[8]    The victim, Charles Jefferies, refused to cooperate with law enforcement (ECF 6-4 at 22).

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Mills has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Mills may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## VI.    CONCLUSION

For the foregoing reasons, the Court will deny Mills' Petition for Writ of Habeas Corpus. A separate Order follows.

5-22-2025
_____
Date

LYDIA KAY GRIGGSBY
United States District Judge

21